**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ltfisher@bursor.com
            jsmith@bursor.com
            ykrivoshey@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, CA 92101
Telephone; (619)272-7014
Facsimile:  (619)330-1819
E-Mail: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA BERCOW, individually and on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNILEVER UNITED STATES, INC.; and DOES 1 through 25, inclusive.<br><br><br>                    Defendant. | Case No. 2:17-cv-03010-DMG-AJW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT UNILEVER UNITED STATES, INC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ................................................................................. 1

II.     ARGUMENT .......................................................................................... 3

    A.   The Court Should Deny Defendant's Motion to Dismiss the Nationwide Class Allegations .......................................................... 3

        1.   Rule 12 Does Not Permit Dismissal of Class Allegations ............................................................................... 3

        2.   Defendant's Arguments That the Court Lacks Specific Personal Jurisdiction Over Claims of Absent Class Members Lack Merit ............................... 4

            a.   The Claims of Absent Class Members Are Irrelevant to Specific Personal Jurisdiction ...................... 4

            b.   *BMS* Does Not Support Dismissal of the Nationwide Class Allegations ............................. 8

        3.   Defendant's Standing Arguments Are Contrary to *Melendres* and Decisions of This Court ................................... 11

        4.   Choice-Of-Law Issues Are Properly Addressed At Class Certification, Not On the Pleadings ................................. 13

    B.   Plaintiff's Allegations Satisfy Rule 8 and the Reasonable Consumer Standard ................................................................... 14

        1.   Whether the Labeling Has the Capacity to Deceive or Confuse Reasonable Consumers Is a Factual Issue Not Susceptible to Resolution on the Pleadings ...................... 14

        2.   Defendant's Argument That the Ingredients List or Back Labeling Clears Up Any Misconception is Contrary to *Williams* ................................................... 18

    C.   Plaintiff's Allegations Satisfy Rule 9 ................................................. 19

    D.   Plaintiff Sufficiently States an Express Warranty Claim..................... 20

    E.   Defendant's Arguments for Dismissal of Equitable Claims and Prayers for Relief Lack Merit ....................................................... 21

        1.   Defendant's Argument for Dismissal of the Unjust Enrichment Claim is Contrary to Rule 8(d)(2), *Astiana* and *Kabbash*. ........................................................ 21

        2.   Defendant's Arguments for Dismissal of Equitable Relief Under The CLRA, UCL and FAL Are Contrary to Rule 8(a)(3) and The Ninth Circuit's Decision In *Moyle* ........................................................ 22

        3.   Under This Court's Decision in *Kabbash*, Plaintiffs Have Standing to Seek Injunctive Relief................................... 24

III.    CONCLUSION ......................................................................................... 25

1

# TABLE OF AUTHORITIES

**PAGE(S)**

2

3

**CASES**

4

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
  2017 WL 1806583 (N.D. Cal. May 5, 2017)........................................................7

5

6

*Abraham v. St. Croix Renaissance Grp., L.L.L.P.*,
  719 F.3d 270 (3d Cir. 2013) ................................................................9

7

*Abrams Shell v. Shell Oil Co.*,
  165 F. Supp. 2d 1096 (C.D. Cal. 2001) ................................................5

8

9

*Adkins v. Comcast Corp.*,
  2017 WL 3491973 (N.D. Cal. Aug. 1 2017) ........................................22

10

*Aliano v. Quaker Oats Co.*,
  2017 WL 56638 (N.D. Ill. Jan. 4, 2017) ..............................................5

11

12

*Allen v. Hyland's, Inc.*,
  300 F.R.D. 643 (C.D. Cal. Aug. 1 2014)........................................2, 13

13

*AM Tr. v. UBS AG*,
  78 F. Supp. 3d 977 (N.D. Cal. 2015) ....................................................5

14

15

*Am. Dredging Co. v. Miller*,
  510 U.S. 443 (1994)..............................................................................8

16

*Ambriz v. Coca Cola Co.*,
  2014 WL 296159 (N.D. Cal. Jan. 27, 2014)........................................6

17

18

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ..............................................................21

19

*Avedisian v. Mercedes-Benz USA, LLC*,
  2013 WL 2285237 (C.D. Cal. May 22, 2013)................................3, 12

20

21

*Balser v. Hain Celestial Grp., Inc.*,
  640 F. App'x 694 (9th Cir. 2016)..................................................14, 15

22

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ............................................................6, 8

23

24

*Bentley v. United of Omaha Life Ins. Co.*,
  2016 WL 7443189 (C.D. Cal. June 22, 2016)..............................1, 3, 23

25

*Biffar v. Pinnacle Foods Grp.*,
  2016 WL 7429130 (S.D. Ill. Dec. 22, 2016) ......................................11

26

*Brazil v. Dole Packaged Foods, LLC*,
  660 F. App'x 531 (9th Cir. 2016)........................................................14

27

28

*Brenner v. Proctor & Gamble Co.*,
  2016 WL 8192946 (C.D. Cal. Oct. 20, 2016) ...........................................15, 20, 21

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
  137 S.Ct. 1773 (2017).................................................................................passim

*Broomfield v. Craft Brew Alliance*,
  2017 WL 3838453 (N.D. Cal. Sept. 1, 2017)................................................9, 11, 23

*Brown v. DirecTV, LLC*,
  2014 WL 12599363 (C.D. Cal. May 27, 2014)....................................................3, 12

*Bruton v. Gerber Prods. Co.*,
  961 F. Supp. 2d 1062 (N.D. Cal. 2013)....................................................................18

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)....................................................................................................6

*Cabrales v. Castle & Cooke Mortg., LLC*,
  2015 WL 3731552 (E.D. Cal. June 12, 2015) ....................................................22, 23

*Casas v. Victoria's Secret Stores, LLC*,
  2014 WL 12708972 (C.D. Cal. Oct. 20, 2014) .......................................................3, 4

*Copeland v. United States Dep't of Justice*,
  2015 WL 12831710 (S.D.N.Y. Oct. 5, 2015) .............................................................8

*Cox v. TeleTech@Home, Inc.*,
  2015 WL 500593 (N.D. Ohio Feb. 5, 2015) ...............................................................9

*Cruz v. Sky Chefs, Inc.*,
  2013 WL 1892337 (N.D. Cal. May 6, 2013).............................................................4

*Davidson v. Kia Motors Am., Inc.*,
  2015 WL 3970502 (C.D. Cal. June 29, 2015)..........................................................14

*Deitz v. Comcast Corp.*,
  2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) .........................................................25

*DeMaria v. Nissan N. Am., Inc.*,
  2016 WL 374145 (N.D. Ill. Feb. 1, 2016) ...............................................................10

*DeMedicis v. CVS Health Corp.*,
  2017 WL 569157 (N.D. Ill. Feb. 13, 2017) .............................................................10

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002).............................................................................................6, 8, 10

*Eagle Canyon Owners' Ass'n. v. Waste Mgmt., Inc.*,
  2017 WL 3017501 (S.D. Cal. July 13, 2017).........................................................10

*Fagan v. Neutrogena Corp.*,
  2014 WL 92255 (C.D. Cal. Jan. 8, 2014)...................................................16, 17, 18

*Ferrari v. Mercedes Benz USA, LLC,*
    2017 WL 3115198 (N.D. Cal. July 21, 2017) ..................................... 10

*Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.,*
    2017 WL 4224723 (N.D. Cal. Sept. 22, 2017)........................... 5, 6, 8, 9

*Forcellati v. Hyland's, Inc.,*
    876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................... 13

*Freeman v. Time, Inc.,*
    68 F.3d 285 (9th Cir. 1995) ................................................................. 16

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.,*
    2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017) ..................................... 10

*Glenn v. Hyundai Motor Am.,*
    2016 WL 3621280 (C.D. Cal. June 24, 2016)....................................... 14

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,*
    8 F. Supp. 3d 467 (S.D.N.Y. 2014) ..................................................... 20

*Guido v. L'Oreal, USA, Inc.,*
    284 F.R.D. 468 (C.D. Cal. 2012).......................................................... 7

*Hairston v. S. Beach Bev. Co., Inc.,*
    2012 WL 1893818 (C.D. Cal. May 18, 2012)....................................... 18

*Ham v. Hain Celestial Grp., Inc.,*
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................. 19

*Hart v. BHH, LLC,*
    2017 WL 2912519 (S.D.N.Y. July 7, 2017) ......................................... 14

*Henderson v. Gruma Corp.,*
    2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ...................................... 24

*Hoffman v. Blattner Energy, Inc.,*
    315 F.R.D. 324 (C.D. Cal. 2016).......................................................... 6

*In re 5-hour ENERGY Marketing and Sales Litig.,*
    2014 WL 5311272 (C.D. Cal. Sept. 4, 2014) ....................................... 13

*In re Checking Account Overdraft Litig.,*
    2016 WL 5848730 (S.D. Fla. July 5, 2016) ......................................... 13

*In re ConAgra Foods, Inc.,*
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ............................................. 7, 14

*In re DirecTV Early Cancellation Litig.,*
    738 F. Supp. 2d 1062 (C.D. Cal. 2010) ................................................ 9

*In re Lenovo Adware Litig.,*
    2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ....................................... 23

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
164 F. Supp. 3d 1040 (N.D. Ill. 2016) ........................................................................9

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*,
2017 WL 3058563 (N.D. Cal. July 19, 2017) ......................................................12

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
2016 WL 2349105 (D. Mass. May 4, 2016) ............................................................9

*Ingalls v. Spotify USA, Inc.*,
2017 WL 3021037 (N.D. Cal. July 17, 2017) ......................................................24

*Jinright v. Johnson & Johnson, Inc.*,
2017 WL 3731317 (E.D. Mo. Aug. 30, 2017) ......................................................10

*Jou v. Kimberly-Clark Corp.*,
2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ................................................17, 18

*Kabbash v. Jewelry Channel, Inc. USA*,
2015 WL 6690236 (C.D. Cal. Nov. 2, 2015) ........................................3, 21, 22, 24

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
95 F. Supp. 3d 284 (D. Conn. 2015) ......................................................................16

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ..................................................................................13

*McKinniss v. Gen. Mills, Inc.*,
2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ......................................................20

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) ..............................................................1, 11, 12, 13

*Melgar v. Zicam LLC*,
2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) ........................................................7

*Michael v. Honest Co., Inc.*,
2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) ........................................................15

*Moyle v. Liberty Mut. Retirement Ben. Plan*,
823 F.3d 948 (9th Cir. 2016) ..................................................................................22

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ..................................................................................................7

*Rose v. Franchetti*,
713 F. Supp. 1203 (N.D. Ill. 1989) ..........................................................................8

*Schorsch v. Hewlett-Packard Co.*,
417 F.3d 748 (7th Cir. 2005) ....................................................................................6

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010) ..................................................................................................7

*Shin v. Campbell Soup Co.,*
   2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ..........................................21

*Shum v. Intel Corp.,*
   630 F. Supp. 2d 1063 (N.D. Cal. 2009)...................................................23

*Stotz v. Mophie Inc.,*
   2017 WL 1106104 (C.D. Cal. Feb. 27, 2017) ........................................12

*Tulsa Cancer Inst. PLLC v. Genentech Inc.,*
   2016 WL 141859 (N.D. Okla. Jan. 12, 2016) ..........................................9

*Viggiano v. Hansen Natural Corp.,*
   944 F. Supp. 2d 877 (C.D. Cal. 2013) .............................................18, 20

*Viggiano v. Johnson & Johnson,*
   2015 WL 12860480 (C.D. Cal. June 12, 2015).................................passim

*Vinole v. Countrywide Home Loans, Inc.,*
   571 F.3d 935 (9th Cir. 2009) ....................................................................3

*Williams v. Gerber Prod. Co.,*
   552 F.3d 934 (9th Cir. 2008) .............................................................passim

*Workman v. Plum, Inc.,*
   141 F. Supp. 3d 1032 (N.D. Cal. 2015)...................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8.............................................................................21, 22, 23

Wright & Miller,
   7A Fed. Prac. & Proc. Civ. § 1757 ..........................................................9

## I.   INTRODUCTION

This is a simple case.  The front labeling of Defendant's skin care products states "100% Natural Moisturizers," "Made With 100% Natural Moisturizes," or similar statements referring to "100% natural" exfoliants or extracts.  FAC, at ¶ 4. The packaging reinforces the impression that the products are all natural with statements like "naturally soothing," and by emphasizing natural ingredients like oatmeal, coconut and orchids.  *Id.* at ¶ 22.  In fact, the products are made with phenoxyethanol, dimethicone and/or methylisothiazolinone—ingredients that have no place in products that are labeled "natural."[1]  *Id.* at ¶ 5.  The Federal Trade Commission ("FTC") has already taken action against cosmetic manufacturers for representing that their products were "natural" when they contained phenoxyethanol, dimethicone or other synthetic ingredients.  *Id.*

Defendant's arguments for dismissal fall under three general categories.  <u>First</u>, Defendant asks the Court to dismiss the nationwide class allegations.  This Court has repeatedly denied such motions on procedural grounds because they seek premature relief.  *E.g.*, *Bentley v. United of Omaha Life Ins. Co.*, 2016 WL 7443189, at *6 (C.D. Cal. June 22, 2016).  Apart from the procedural deficiency, Defendant's arguments also lack merit.  Defendant first contends that under *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773 (2017) ("*BMS*"), this Court lacks specific personal jurisdiction over the claims of out-of-state class members, but *BMS* did not involve a class action and other courts have rejected the same argument. Defendant then contends that Plaintiff lacks standing to pursue claims of out-of-state class members.  However, the Ninth Circuit's decision in *Melendres v. Arpaio*, 784

---

[1] The FAC also refers to the ingredient sodium chloride, but the intended ingredient is sodium laureth sulfate, which is a synthetic skin and eye irritant.  Plaintiff intends to amend as appropriate after the order on Defendant's motion to dismiss to correct that error.

F.3d 1254, 1261-62 (9th Cir. 2015), and decisions of this Court, establish that if Plaintiff has standing to bring her individual claims (which is not disputed here), then "the standing inquiry is concluded" and any arguments about whether she may represent out-of-state class members must wait for class certification.  Finally, Defendant contends that purported differences in state laws necessarily create unspecified "manageability" problems for a nationwide class, overlooking that this Court rejected much the same argument in *Allen v. Hyland's, Inc.*, 300 F.R.D. 643, 658 (C.D. Cal. Aug. 1 2014).

Second, Defendant contends that the Court can conclude, without evidence, that no reasonable consumer could be deceived or confused by the labeling.  There is a large body of law on "natural" labeling in this Circuit, and Defendant cites almost none of it.  Under *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008), whether "natural" labeling is deceptive, misleading, or unfair is ordinarily a question of fact, and it is only "the rare situation" in which that issue can be resolved on the pleadings.  Dozens of courts, including this Court in *Viggiano v. Johnson & Johnson*, 2015 WL 12860480 (C.D. Cal. June 12, 2015), have followed *Williams* and denied motions to dismiss in natural labeling cases.  Given that *Williams* involved representations similar to those at issue here, this is not one of those "rare situations" where dismissal on the pleadings is permissible.

Third, Defendant directs several attacks at the equitable claims and prayers for relief.  In two related arguments, Defendant contends that the unjust enrichment claim must be dismissed for being duplicative of the fraud claims; and that no equitable relief is available under the CLRA, FAL and UCL because there is an adequate remedy at law.  Both arguments are contrary to Rule 8 and Ninth Circuit decisions establishing that equitable claims may proceed in tandem with legal claims.  Defendant also contends Plaintiff lacks standing to seek injunctive relief

based on the same argument this Court rejected in *Kabbash v. Jewelry Channel, Inc. USA*, 2015 WL 6690236 (C.D. Cal. Nov. 2, 2015).

## II.   ARGUMENT

### A.   The Court Should Deny Defendant's Motion to Dismiss the Nationwide Class Allegations[2]

#### 1.   Rule 12 Does Not Permit Dismissal of Class Allegations

This Court has frequently denied motions to strike or dismiss class allegations because "a motion for class certification is a more appropriate vehicle," for resolving certification issues. *Bentley v. United of Omaha Life Ins. Co.*, 2016 WL 7443189, at *6 (C.D. Cal. June 22, 2016); *accord Viggiano v. Johnson & Johnson*, 2015 WL 12860480, at *6 (C.D. Cal. June 12, 2015); *Brown v. DirecTV, LLC*, 2014 WL 12599363, at *2 (C.D. Cal. May 27, 2014); *Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237, at *8 (C.D. Cal. May 22, 2013).  Defendant does not acknowledge, much less distinguish, these cases.

Moreover, this Court's prior rulings on this issue are consistent with the weight of authority.  *See*, *e.g.*, *Casas v. Victoria's Secret Stores, LLC*, 2014 WL 12708972, at *9 (C.D. Cal. Oct. 20, 2014) (Rule 12 "is not the appropriate procedural vehicle to challenge class allegations."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("the pleadings alone will not resolve the question of class certification").  As the court in *Casas* explained, "there are [three] convincing reasons" for concluding that motions to dismiss or strike class allegations at the pleading stage are "improper":

> First, Rule 12(b)(6) permits a party to challenge a pleading on the basis that it fails 'to state a claim upon which relief can be granted.'

---

[2] Defendant's arguments for dismissal of the nationwide class allegations are inapplicable to Plaintiff's claims under the CLRA, UCL and FAL because she asserts each of those causes of action only on behalf of a putative California subclass, not the putative nationwide class.  *See* FAC, at ¶¶ 35, 45, 52.

But class treatment is a 'procedural device,' not a claim for relief. . . . Second, decisions rendered under Rule 12(b)(6) and Rule 23 are subject to different standards of review.  [Third], Rule 23(f) provides a mechanism by which a plaintiff (or defendant) can petition for review of a denial (or grant) of class certification under Rule 23, whereas, de facto denials of 'classwide claims' under Rule 12(b)(6) are ineligible for immediate discretionary review (barring exceptional circumstances).[3]

*Casas*, 2014 WL 12708972, at *9 (emphasis added).  Although a few courts resolved class allegations at the pleading stage, "it is in fact rare to do so in advance of a motion for class certification."  *Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337, at *7 (N.D. Cal. May 6, 2013) (collecting authorities).  Accordingly, Defendant's motion to dismiss the nationwide class allegations should be denied on procedural grounds.

### 2. Defendant's Arguments That the Court Lacks Specific Personal Jurisdiction Over Claims of Absent Class Members Lack Merit

Relying primarily on *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773 (2017) ("*BMS*"), Defendant argues that the Court may dismiss the nationwide class allegations because it lacks specific personal jurisdiction over the claims of putative class members outside of California.  MTD, at 6:7-10:7.  That argument fails because: (a) specific personal jurisdiction is not based on the claims of absent class members; and (b) the *BMS* decision did not change that rule.

#### a. The Claims of Absent Class Members Are Irrelevant to Specific Personal Jurisdiction

Defendant's argument that the Court lacks specific personal jurisdiction over claims of absent, out-of-state class members fails for four reasons:

---

[3] Although Defendant states in its Notice of Motion that, in addition to Rule 12(b)(6), it also is moving to dismiss the class allegations under Rule 12(b)(1) and (2), the reasoning in *Casas* applies equally with respect to those rules.

1      First, courts throughout the country have held that the "claims of unnamed

2  class members are irrelevant to the question of specific jurisdiction." *AM Tr. v. UBS*

3  *AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015), *aff'd*, 681 Fed. Appx. 587 (9th Cir.

4  2017).  "[I]t is the named plaintiff's claim that must arise out of or result from the

5  defendant's forum-related activities, not the claims of the unnamed members of the

6  proposed class, who are not party to the litigation absent class certification." *Aliano*

7  *v. Quaker Oats Co.*, 2017 WL 56638, at *4 (N.D. Ill. Jan. 4, 2017) (internal

8  quotation omitted).  "[T]he relaxation of venue and personal jurisdiction

9  requirements as to unnamed members of a plaintiff class," requires courts to

10  distinguish between unnamed class members and named plaintiffs when addressing

11  those requirements. *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5

12  (C.D. Cal. 2001) (emphasis in original), *aff'd after transfer to Southern District of*

13  *Texas*, 343 F. 3d 482 (5th Cir. 2003).

14      The recent decision in *Fitzhenry-Russell v. Dr. Pepper Snapple Group, Inc.*,

15  2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017), is instructive because it rejected

16  the same arguments Defendant makes here in the context of a nationwide class action

17  challenging false advertising.  There, the defendant argued that 88% of the putative

18  class members resided outside California, and that under the Supreme Court's

19  decision in *BMS*, the court lacked specific personal jurisdiction over claims of out-

20  of-state class members.  *Id.*  Based on that theory, the defendant moved to dismiss

21  the claims non-California class members.

22      The court in *Fitzhenry-Russell* denied the motion after explaining that *BMS*

23  did not involve a class action and did not change the laws governing class actions.

24  *Id.* at *5; *see also* Section II(A)(2)(b) below (addressing *BMS* more fully).  The

25  governing principle therefore continues to be that "'nonnamed class members . . .

26  may be parties for some purposes and not for others.  The label 'party' does not

27  indicate an absolute characteristic, but rather a conclusion about the applicability of

28

various <u>procedural rules that may differ based on context</u>.'" *Id.* (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002)) (emphasis in original).  Absent "class members are represented vicariously but are not litigants themselves" in the same sense that the named plaintiffs are.  *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) (citing *Devlin*).  Claims of absent class members, for example, cannot defeat complete diversity,[4] and do not factor into the venue[5] or standing[6] analysis.  The same principle holds true for specific personal jurisdiction.  *See Fitzhenry-Russell*, 2017 WL 4224723, at *5.  Defendant's position ignores these principles, and if adopted, would result in inconsistent rules governing personal jurisdiction, venue, and standing in class actions.

Second, the fact that absent class members are not "haling" the defendant into any forum makes all the difference for purposes of analyzing personal jurisdiction.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random' or 'fortuitous' or 'attenuated' contacts").  Although absent class members may ultimately recover from a defendant, they never assert claims against a defendant in a sense that matters for personal jurisdiction.  It is the named plaintiffs who force the defendant to answer the suit, respond to discovery

---

[4] *Devlin*, 536 U.S. at 10 ("The rule that nonnamed class members cannot defeat complete diversity is likewise justified by the goals of class action litigation. Ease of administration of class actions would be compromised by having to consider the citizenship of all class members, many of whom may even be unknown, in determining jurisdiction").

[5] *Ambriz v. Coca Cola Co.*, 2014 WL 296159, at *5 (N.D. Cal. Jan. 27, 2014) ("'The general rule is that only the residence of the named parties is relevant for determining whether venue is proper'") (quoting Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1757 (3d ed.)).

[6] *E.g.*, *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 332 (C.D. Cal. 2016) (J. Gee) ("'In a class action, standing is satisfied if at least one named plaintiff meets the requirements'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)).

and defend against class certification.  Likewise, the defendant need only propound discovery and file dispositive motions against the named plaintiffs.  In contrast, "an absent class-action plaintiff is not required to do anything."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 (1985).  Therefore, the rule that a court can exercise personal jurisdiction over a class so long as it can exercise personal jurisdiction over the claims of the named plaintiffs makes sense.

Third, Defendant simply ignores the fact that courts throughout the country—including in this District—have long certified multi-state or nationwide classes in a variety of circumstances where the defendant was not incorporated or headquartered in the forum state.[7]  Defendant does not argue those cases are wrongly decided and acknowledges "[*BMS*] did not change the law" on class actions.  MTD, at 9:20.  If that is the case, then Defendant's position cannot be correct.

Fourth, Defendant argues that under the Rules Enabling Act ("REA"), "a rule of procedure cannot 'abridge, enlarge, or modify' any substantive right," and therefore "Rule 23 cannot confer or expand personal jurisdiction."  MTD, at 9:12-15.  The flaw in that reasoning is that neither Rule 23 nor personal jurisdiction implicates substantive rights.  In *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010), the Supreme Court rejected the argument that class certification violated the defendant's "substantive rights," explaining, "a class action . . . merely enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits.  And like traditional joinder, it leaves the parties' legal rights and duties intact and the rules of decision unchanged."  *Id.*  The Supreme

---

[7] *E.g.*, *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2017 WL 1806583 (N.D. Cal. May 5, 2017) (certifying nationwide classes in action alleging claims under the Telephone Consumer Protection Act); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) (certifying eleven-state class in "natural" labeling case); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) (certifying New York and California classes); *Melgar v. Zicam LLC*, 2016 WL 1267870, at *2, 7 (E.D. Cal. Mar. 31, 2016) (certifying ten-state class).

Court further explained that it has "rejected every statutory challenge to a Federal Rule that has come before [it]," and it is "obvious that rules allowing multiple claims . . . to be litigated are also valid." *Id.* at 1442-43.

Defendant's "substantive rights" argument likewise fails because "personal jurisdiction is distinct from the underlying cause of action, and is more procedural than substantive." *Rose v. Franchetti*, 713 F. Supp. 1203, 1212 (N.D. Ill. 1989), *aff'd*, 979 F.2d 81 (7th Cir. 1992); *see also Copeland v. United States Dep't of Justice*, 2015 WL 12831710, at *2 (S.D.N.Y. Oct. 5, 2015) ("[V]enue and personal jurisdiction are threshold procedural issues to be decided before the substantive grounds in a motion to dismiss."); *cf. Am. Dredging Co. v. Miller*, 510 U.S. 443, 454 n.4 (1994) ("*forum non conveniens* is not a substantive right of the parties, but a procedural rule of the forum"). If out-of-state class members sue in their own respective forums, as Defendant contends they must, then the only difference would be a multiplicity of suits and greater burden on the courts, which is precisely what Rule 23 is designed to prevent. *See Devlin*, 536 U.S. at 11 ("one of the goals of class action litigation [is] preventing multiple suits").

> b. *BMS Does Not Support Dismissal of the Nationwide Class Allegations*

*BMS* does not support dismissal of the nationwide class allegations because it did not address a class action and did not change the law on class actions. *See Fitzhenry-Russell*, 2017 WL 4224723, at *5 (explaining and distinguishing *BMS*). Instead, *BMS* involved a mass tort where a group of plaintiffs sued for personal injuries on their own behalf, and in that context the Supreme Court held that the California state court lacked personal jurisdiction over the claims of the named plaintiffs who resided outside California. *See BMS*, 137 S.Ct. at 1777. In her dissenting opinion in *BMS*, Justice Sotomayor specifically explained that the Court "[did] not confront the question whether its opinion here would also apply to a class

action in which a plaintiff injured in the forum State seeks to represent a nationwide

class of plaintiffs, not all of whom were injured there."  *Id.* at n.4.

The distinction matters because "unlike a class action, a mass action has no

representative or absent members because all plaintiffs in a mass action are named in

the complaint . . . ."  *Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270,

272 n.1 (3d Cir. 2013).  Whereas a mass action can result in hundreds of individual

claims, "a class action is a representative action where a named plaintiff or plaintiffs

represent a large number of similarly situated people who are not part of the

lawsuit."  *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1072 (C.D.

Cal. 2010).  Unlike in a mass action where each named plaintiff's claim stands or

falls on its own, "the class claims rise or fall with the claims of the class

representative."  *Cox v. TeleTech@Home, Inc.*, 2015 WL 500593, at *7 (N.D. Ohio

Feb. 5, 2015).

District courts therefore have correctly held that *BMS* is inapplicable to class

actions.  In *Broomfield v. Craft Brew Alliance*, 2017 WL 3838453, at *15 (N.D. Cal.

Sept. 1, 2017), the district court explained that despite "the temptation by defendants

across the country to apply the rationale of *Bristol-Myers* to a class action," its

applicability to class actions "was expressly left open by the Supreme Court."  Later,

in *Fitzhenry-Russell*, 2017 WL 4224723, at *5, the court concluded that "*Bristol-Myers* is meaningfully distinguishable*" because it was "a mass tort action, in which

each plaintiff was a named plaintiff."  Many of the other decisions cited by

Defendant here are distinguishable for the same reason; namely, they were not class

actions and the courts only evaluated specific personal jurisdiction in terms of the

named plaintiffs.[8]

---

[8] *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 2016 WL 2349105, at *5 (D. Mass. May 4, 2016); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 164 F. Supp. 3d 1040, 1046-49 (N.D. Ill. 2016); *Tulsa Cancer Inst. PLLC v. Genentech*

Defendant argues that it "makes no difference" that *BMS* was not a class action because other courts "have reached the same result in class actions."  MTD, at 9:12-16.  However, Defendant cites three decisions in class actions where the defendants cited *BMS* but did <u>not</u> argue that *BMS* supports dismissing claims of out-of-state absent class members.[9]

Defendant also cites two unpublished decisions from the Northern District of Illinois that pre-date *BMS*: *DeMaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *6-8 (N.D. Ill. Feb. 1, 2016) and *DeMedicis v. CVS Health Corp.*, 2017 WL 569157, at *3-5 (N.D. Ill. Feb. 13, 2017).  *DeMaria* is not instructive because the court's analysis focused solely on the claims of the named plaintiffs, most of whom lived outside of Illinois.  *See DeMaria*, 2016 WL 374145, at *8 ("the Court finds that personal jurisdiction . . .  is thus lacking as to the claims of every <u>named plaintiff</u> but Maria DeMaria") (emphasis added).  After the court determined it only had jurisdiction with respect to the named plaintiff in Illinois, it assumed without further analysis that it lacked jurisdiction over the claims of out-of-state class members she sought to represent.  *See id.*  It does not appear that the defendant in *DeMaria* had argued in its brief that the court lacked personal jurisdiction over the claims of out-of-state class members, such that the issue was fully presented to the district court. *See id.* at *6-8.  The court in *DeMedicis* likewise barely analyzed the issue, and the only case it cited for the proposition that it lacked specific personal jurisdiction over claims of out-of-state class members was the earlier decision in *DeMaria*.  *See DeMedicis*, 2017 WL 569157, at *3.

---

*Inc.*, 2016 WL 141859, at *3-4 (N.D. Okla. Jan. 12, 2016); *Jinright v. Johnson & Johnson, Inc.*, 2017 WL 3731317, at *3-5 (E.D. Mo. Aug. 30, 2017).
[9] *See FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *6 (S.D.N.Y. Aug. 18, 2017); *Ferrari v. Mercedes Benz USA, LLC*, 2017 WL 3115198, at *3 (N.D. Cal. July 21, 2017); *Eagle Canyon Owners' Ass'n. v. Waste Mgmt., Inc.*, 2017 WL 3017501, at *4 (S.D. Cal. July 13, 2017).

Finally, even if *BMS* potentially applied to class actions (which it does not), that would not support departing from this Court's prior rulings denying motions to dismiss or strike class allegations at the pleading stage.  *See* Section II(A)(1) above; *see also Broomfield*, 2017 WL 3838453 at *15 (holding it would be premature to dismiss claims of out-of-state members of a putative nationwide class based on *BMS*); *Biffar v. Pinnacle Foods Grp.*, 2016 WL 7429130, at *6 (S.D. Ill. Dec. 22, 2016) (holding that the issue of whether the court had personal jurisdiction over out-of-state class members "must be addressed later in the litigation").

### 3. Defendant's Standing Arguments Are Contrary to *Melendres* and Decisions of This Court

As a fallback to its personal jurisdiction argument, Defendant argues that Plaintiff also lacks standing to pursue nationwide claims on behalf of out-of-state class members.  *See* MTD, at 10:9-26.  That is incorrect.  In *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015), the Ninth Circuit explained that there are two rubrics for determining whether a lead plaintiff may pursue claims on behalf of unnamed class members: the "standing approach" and the "class certification approach":

> The "standing approach" treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the "standing" of the named plaintiff to represent the class.  In other words, if there is a disjuncture between the injuries suffered by named and unnamed plaintiffs, courts applying the standing approach would say the disjuncture deprived the named plaintiff of standing to obtain relief for the unnamed class members. . . .  The "class certification approach," on the other hand, "holds that once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."

*Melendres*, 784 F.3d at 1261-62 (internal citations omitted).  The Ninth Circuit stated, "[w]e adopt the class certification approach," and warned against "conflat[ing] standing and class certification."  *Id.* at 1262.

As a result, "representative parties who have a direct and substantial interest have standing," and "the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."  *Id.* District courts have applied the rule in *Melendres* in a variety of class actions where the defendant argued on a motion to dismiss that the plaintiff lacked standing to represent certain putative class members.  *See, e.g.*, *Stotz v. Mophie Inc.*, 2017 WL 1106104, at *6 (C.D. Cal. Feb. 27, 2017) (under *Melendres*, whether plaintiffs had standing to pursue claims on behalf of certain consumers was an issue for class certification, and not a standing issue that could be resolved on the pleadings); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig,* 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017) (same).  In contrast, Defendant cites only lower court decisions in support of its standing argument, all of which either predate *Melendres* or did not consider that decision.  *See* MTD, at 10:19-26 (citing district court decisions).

Equally important, the reasoning in *Melendres* is consistent with the decisions of this Court denying motions to dismiss or strike class allegations.  For example, in *Viggiano v. Johnson & Johnson*, 2015 WL 12860480, at *6 (C.D. Cal. June 12, 2015), this Court held that class certification is the proper juncture for determining whether the plaintiff has standing to assert claims under the laws of states other than California.  *Accord, e.g.*, *Brown*, 2014 WL 12599363, at *2; *Avedisian*, 2013 WL 2285237, at *8.  Other courts have similarly held that "where a named plaintiff has established individual standing to bring specific claims against a defendant in his or her own right, but asserts parallel common law claims arising under different states'

laws on behalf of a putative class," the issue is resolved in connection with Rule 23's requirements. *In re Checking Account Overdraft Litig.*, 2016 WL 5848730, at *4 (S.D. Fla. July 5, 2016); *see also In re 5-hour ENERGY Marketing and Sales Litig.*, 2014 WL 5311272, at *18 (C.D. Cal. Sept. 4, 2014) (defendants' challenges to common law claims asserted on behalf of a nationwide class denied as "premature"). Here, Defendant does not contend that Plaintiff lacks standing to bring her individual claim, and thus under *Melendres* "the standing inquiry is concluded." *Melendres*, 784 F.3d at 1261. Defendant's challenges to the class allegations therefore must wait until Plaintiff files her motion for class certification.

### 4. Choice-Of-Law Issues Are Properly Addressed At Class Certification, Not On the Pleadings

Relying primarily on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012), Defendant contends that the Court can dismiss the nationwide allegations under the theory that choice-of-law rules will inevitably create unspecified "manageability problems." MTD, at 11:5. This Court held in *Allen v. Hyland's, Inc.*, 300 F.R.D. 643, 658 (C.D. Cal. Aug. 1 2014), however, that *Mazza* does not prohibit nationwide class claims, and defendants cannot defeat a nationwide class by "conclusorily assert[ing] that the laws of the 50 states are 'markedly different.'" The issue of whether a nationwide or multi-state class is permissible requires a "case-specific analysis." *Id.*

The district court applied the same reasoning in *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012), when faced with a similar argument on a motion to dismiss. Consistent with *Allen*, the court held that the defendant's argument was premature and that *Mazza* "made clear that its holding was cabined to the facts before it." *Id.* "[O]nce the relevant facts of the case have been explored during discovery, it is possible that Plaintiff could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws immaterial," or resolve the issue by certifying groups of subclasses. *Id.* Thus,

courts have continued to certify nationwide or multistate class actions long after *Mazza*.  *E.g.*, *Hart v. BHH, LLC*, 2017 WL 2912519, at *9 (S.D.N.Y. July 7, 2017) (certifying a nationwide fraud class and multi-state warranty class); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d at 1034 (certifying multi-state class).[10]

**B.    Plaintiff's Allegations Satisfy Rule 8 and the Reasonable Consumer Standard**

**1.    Whether the Labeling Has the Capacity to Deceive or Confuse Reasonable Consumers Is a Factual Issue Not Susceptible to Resolution on the Pleadings**

Defendant argues that the Court can rule, as a matter if law, that no reasonable consumer would be deceived or confused by the representations "100% Natural Moisturizers," "Made With 100% Natural Moisturizes," or similar representations referring to exfoliants or extracts.  *See* MTD, at 13:1-8; 13:22-17:21.  The Ninth Circuit has at least twice reversed dismissal on the pleadings where the defendants made similar arguments in natural labeling cases.  *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016).  In those decisions, the Ninth Circuit held that "[w]hether a business practice is deceptive, misleading, or unfair is ordinarily a question of fact to be decided by a jury," *Balser*, 640 F. App'x at 696, and that it is only "the rare situation" in which that issue can be resolved on the pleadings.  *Williams*, 552 F.3d at 938-39; *see also Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016) (reversing summary judgment for defendant in "natural" labeling case due to question of fact over the reasonable consumer standard).  Thus, in

---

[10] Most of the decisions cited by Defendant where the courts dismissed nationwide class allegations are distinguishable because the courts held that the plaintiffs could not pursue UCL and CLRA claims on a nationwide basis, but here, Plaintiff only pursues those claims on behalf of a California subclass.  *See Davidson v. Kia Motors Am., Inc.*, 2015 WL 3970502, at *3 (C.D. Cal. June 29, 2015); *Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *10 (C.D. Cal. June 24, 2016); FAC, at ¶¶ 35, 45.

*Williams* the court explained, "the statement that [the product] was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural."  *Id.* at 939; *see also Balser*, 640 Fed. App'x. at 697 ("the statements that the products were 'natural' and '100% vegetarian' could be taken as a claim that no synthetic chemicals were in the products").  Defendant asks this Court to make the same reversible error made by the district courts in *Williams* and *Balser*.

Numerous courts have followed *Williams* and denied motions to dismiss in natural labeling cases.  *See Michael v. Honest Co., Inc.*, 2016 WL 8902574, at *22 (C.D. Cal. Dec. 6, 2016) (collecting authorities denying motions to dismiss in natural labeling cases).  This Court is one of them, having followed *Williams* and denied a motion to dismiss where the plaintiffs alleged that labels such as "100% Natural" and "Made From Monk Fruit" were misleading due to the presence of synthetic ingredients.  *Viggiano v. Johnson & Johnson*, 2015 WL 12860480 (C.D. Cal. June 12, 2015).  And in *Brenner v. Proctor & Gamble Co.*, 2016 WL 8192946, at *8 (C.D. Cal. Oct. 20, 2016), the court concluded that the fact that the FTC "views phenoxyethanol [one of the ingredients at issue here] to be 'artificial' and thus not 'natural' . . . raises a plausible inference that a significant portion of consumers would believe that Defendant's 'Natural Clean' claim was false or misleading." *Brenner*, 2016 WL 8192946, at *5.  The same reasoning applies here.  *See* FAC, at ¶ 5 (describing Defendant's use of phenoxyethanol and FTC actions challenging the use of phenoxyethanol in products labeled "natural").

Against this weight of authority, Defendant argues that the labeling statements "100% Natural Moisturizers" or "Made With 100% Natural Moisturizers" (or, as the case may be, "natural exfoliants" or "natural extracts"), refers to specific ingredients, not the product as a whole.  MTD, at 15:5-16:4.  Thus, in Defendant's view, there is

no possibility that a reasonable consumer could be deceived or confused about whether the <u>entire</u> product is 100% natural.

The flaw in that argument is that it requires the Court to resolve a question of fact about how a reasonable consumer would construe the labeling—which is precisely what *Williams* and *Balser* forbid. *E.g.*, *Williams*, 552 F.3d at 938-39. In fact, the challenged statements here (*e.g.* "Made With 100% Natural Moisturizers") are not that different from the statement in *Williams* that the product was "made with 'fruit juice and other all natural ingredients.'" *Id.* at 936 (quoting labeling). *Williams* demonstrates that the fact that Defendant can propose one plausible interpretation of the labeling here cannot support dismissal because it is not the <u>only</u> plausible interpretation. In *Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014), for example, the defendant argued on a motion to dismiss that, as a matter of law, the label "100% naturally sourced sunscreen ingredients" was not deceptive because it only referred to specific ingredients. The court rejected that argument, explaining that the reasonable consumer test "'must be evaluated from the vantage of a reasonable consumer,'" not the vantage of the defendant. *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). "Defendant's argument that the representations are literally true because the term '100%' only applies to the ingredients in the products that provide protection from the sun (and not to other ingredients in the lotions that serve other purposes) rests on one possible interpretation of the language, but it is not the only possible interpretation." *Id.* Hence, whether reasonable consumers would adopt the defendant's interpretation or plaintiff's interpretation could not be resolved on the pleadings. *See id.*

The court reached the same conclusion in *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 95 F. Supp. 3d 284, 289 (D. Conn. 2015), explaining, "it seems perfectly reasonable to me that a typical consumer might interpret the phrase '100% naturally-sourced sunscreen ingredients' on a sunscreen product label to

mean that the whole product was natural.  After all, the entire product—everything in the container—is applied by a consumer as a sunscreen, and it seems unlikely that a reasonable consumer would distinguish between the active 'sunscreen ingredients' and the 'non-sunscreen ingredients' inside a container." *See also Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, at *7 (N.D. Cal. Dec. 10, 2013) ("Whether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion.").

The reasoning of these cases applies equally here.  As in *Fagan* and *Langan*, the entire product is applied to the skin, not just the ingredients that Defendant contends are the subject of the natural labeling.  Equally important, Defendant's argument that the challenged representations should be read "in context" (MTD, at 15:5-6), rests on a factual dispute about how consumers would react to the labeling. The context of product packaging can <u>reinforce</u> the plausibility of natural labeling claims where, for instance, it has other non-challenged images or statements that suggest that the product is natural.  *See Jou*, 2013 WL 6491158, at *10 (images of green leaves on packaging reinforced the plausibility of plaintiff's natural labeling claims).  That is the case here because in addition to the challenged statements, the product labeling includes: (1) phrases like "naturally soothing" or "gentle for sensitive skin;" (2) prominent references to natural ingredients like oatmeal, coconut and orchids; and (3) the use of leafy imagery in the name "St. Ives."  *See* FAC, ¶ 21 (depicting product packaging).  And if Defendant only intended to convey to consumers that a few ingredients were natural, there would be no reason to prominently display the term "100%" in oversized, bold font relative to the rest of the challenged statements.  *See id.*  These facts distinguish the only natural labeling decision Defendant cites in support of its reasonable consumer and Rule 8

arguments, *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1098 (N.D. Cal. 2013), which was limited to its facts and which, in any event, resulted in dismissal with leave to amend.

### 2. Defendant's Argument That the Ingredients List or Back Labeling Clears Up Any Misconception is Contrary to *Williams*

Defendant argues that no reasonable consumer could be misled by its labeling because the ingredients are disclosed on the ingredients list on the back of the products, and the back labeling clarifies which ingredients are purportedly natural. MTD, at 16:5-17.  "[U]nder *Williams*, a defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused."  *Jou*, 2013 WL 6491158, at *6 (citing *Williams*, 552 F.3d at 939–40); *Fagan*, 2014 WL 92255, at *2 ("Defendant's alternative argument that any ambiguity is … dispelled by the explicit list of ingredients elsewhere on the product is foreclosed by [*Williams*]").  Defendant attempts to evade this rule by arguing it does not apply "where the [front and back] labels are consistent."  MTD, at 16:18-20.  But Defendant does not contend that the challenged ingredients phenoxyethanol, dimethicone and methylisothiazolinone (which are only disclosed in the ingredients list) are "natural."  Therefore, this is not a case where the Court can conclude, as a matter of law, that the front and back labels are consistent. Defendant's argument again turns on a factual dispute about how consumers construe the front labeling.[11]

---

[11]  The decisions cited by Defendant are distinguishable.  In *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013), the court dismissed "natural" claims because the challenged representation was that a soda contained "all natural flavors," but the plaintiff "[did] not identify any artificial flavor in the drink." The decision in *Hairston v. S. Beach Bev. Co., Inc.*, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) is distinguishable for similar reasons.  *See Jou*, 2013 WL 6491158 at *9 (distinguishing *Hairston* because unlike in *Jou*, "the phrase 'all natural with vitamins' was consistent with the ingredient label that listed only natural ingredients and vitamins.").  Here, in contrast, the FAC identifies the ingredients at

### C.    Plaintiff's Allegations Satisfy Rule 9

Defendant conspicuously cites no authority for its contention that the allegations fail to satisfy Rule 9.  MTD, at 17:15-21.  As this Court held in *Viggiano v. Johnson & Johnson*, 2015 WL 12860480, at *2-3, Rule 9 requires the "who, what, when, where, and how of the misconduct charged."  In the context of a natural labeling case like this, allegations identifying the products, labeling, and ingredients at issue are generally sufficient.  *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1194-95 (N.D. Cal. 2014).  The allegations here more than satisfy that test:

- **Who:** Defendant produces, markets and distributes various consumer skin care and hygiene products in retail stores across the United States.  Among others, those products include the Products listed in Paragraph 3.  Compl., ¶ 14.

- **What and Where: "**the front packaging of each one of the Products stated in prominent lettering either "100% Natural Moisturizers" "100% Natural Exfoliant" or "100% Natural Extracts." Defendant later changed the labeling so that the front packaging of each Product states in prominent lettering either "Made with 100% Natural Moisturizers," "Made with 100% Natural Exfoliant" or "Made with 100% Natural Extracts." *Id.* at ¶ 4; *see also id.* at ¶¶ 3, 21.

- **When:** "The St. Ives® Body Lotion and Body Wash Products have been labeled "natural," as alleged herein, at all times during the last four years, at least." *Id.* at ¶ 22.

- **How**: "Contrary to the labeling, however, every purportedly natural Product contains phenoxyethanol, dimethicone . . . and/or methylisothiazolinone." *Id.* at ¶ 5.

Defendant only argues that the allegations fail to provide specific details about the circumstances of Plaintiff's purchase.  MTD, at 17:18-20.  That is incorrect (see FAC, at ¶ 11), but also irrelevant because the details required by Rule 9 pertain to the

---

issue.  FAC, ¶ 5.  Finally, *Workman v. Plum, Inc.*, 141 F. Supp. 3d 1032, 1036-37 (N.D. Cal. 2015), is inapposite because the claims were not based on natural labeling or affirmative misrepresentations on the front packaging.

defendant's "misconduct," not the plaintiff's purchase.  *Viggiano*, 2015 WL 12860480, at *2.

### D.     Plaintiff Sufficiently States an Express Warranty Claim

Defendant's arguments for dismissal of the express warranty claim rehash its arguments for dismissal under Rule 8 and the reasonable consumer standard already addressed above.  *See* MTD, at 17:24-18:15.  For purposes of an express warranty claim, a "description of goods" qualifies as a warranty, and the term "natural" is a description of goods.  *Brenner*, 2016 WL 8192946, at *7.  Thus, many courts have denied motions to dismiss express warranty claims in natural labeling cases.  *See, e.g.*, *id.* at *8 ("Plaintiff has plausibly alleged that the 'Natural Clean' label is false and has otherwise adequately plead the elements of an express warranty claim"); *Aguiar v. Merisant*, 2015 6492220, at *9 (C.D. Cal. Mar. 24, 2014) ("natural" representation on food sweetener was express warranty); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 477 (S.D.N.Y. 2014) (denying motion to dismiss express warranty claim in action challenging "Active Naturals" labeling).

Defendant primarily relies on *Viggiano v. Hansen Natural Corp.*, but as explained above, the court dismissed that case because the plaintiff failed to identify any synthetic ingredient in the product, whereas that is not the case here.  *See* 944 F. Supp. 2d at 894; *see also* FAC, at ¶ 5.  Defendant also cites *McKinniss v. Gen. Mills, Inc.*, 2007 WL 4762172, at *5 (C.D. Cal. Sept. 18, 2007), where the court found that the representation that sugary cereals such as Trix and Berry Berry Kix contained "natural fruit flavors" was not a warranty that there was real fruit in the cereal. *McKinniss* therefore bears no resemblance to this case.

**E.    Defendant's Arguments for Dismissal of Equitable Claims and Prayers for Relief Lack Merit**

### 1.  Defendant's Argument for Dismissal of the Unjust Enrichment Claim is Contrary to Rule 8(d)(2), *Astiana* and *Kabbash*.

Defendant's argument that the unjust enrichment claim must be dismissed because "it duplicates the fraud claims" (MTD, at 18:22) is contrary to Rule 8(d)(2), which provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."  In *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015), the Ninth Circuit cited Rule 8(d)(2) when it rejected the proposition that unjust enrichment claims must be dismissed if they are duplicative of legal claims, explaining that "[t]o the extent the district court concluded that the cause of action was . . .  duplicative of or superfluous to Astiana's other claims, this is not grounds for dismissal."  *Astiana*, 783 F.3d at 764.  Later, in *Kabbash v. Jewelry Channel, Inc. USA*, 2015 WL 6690236 (C.D. Cal. Nov. 2, 2015), this Court followed *Astiana* and cited Rule 8(d)(2) when rejecting an argument similar to the one that Defendant makes here.  *See Kabbash*, 2015 WL 2015 WL 6690236, at *6; *accord*, *e.g.*, *Brenner*, 2016 WL 8192946 at *8 (following *Astiana*).

In contrast, the only decision Defendant cites in support of its argument is this Court's decision in *Shin v. Campbell Soup Co.*, 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017), but Defendant misconstrues that decision.  This Court did not hold that unjust enrichment claims must be dismissed if they are duplicative of other claims, because that would be contrary to *Astiana*.  It simply concluded that the core allegations that formed the basis for all of the claims were implausible, and hence all of the claims "fail[ed] for the same reason."  *Id.* at *8.  *Shin* is therefore inapposite.

### 2. Defendant's Arguments for Dismissal of Equitable Relief Under The CLRA, UCL and FAL Are Contrary to Rule 8(a)(3) and The Ninth Circuit's Decision In *Moyle*

Defendant asks the Court to dismiss the requests for injunctive relief and restitution because "equitable relief under the CLRA, UCL and FAL" is not available "when plaintiffs have alleged an adequate remedy at law." *Id.* at 19:11-12. That argument is contrary to Rule 8(a)(3), which provides that "a demand for relief . . . may include relief in the alternative or different types of relief."

In *Moyle v. Liberty Mut. Retirement Ben. Plan*, 823 F.3d 948, 962 (9th Cir. 2016), the Ninth Circuit emphasized that allowing plaintiffs to alternatively seek legal and equitable relief under ERISA, including restitution, "adheres to the Federal Rules of Civil Procedure, which requires that [a] pleading . . . <u>may include relief in the alternative</u> . . . .'" (Quoting Rule 8(a)(3)) (emphasis in original).[12] The outcome in *Moyle* was consistent with the Ninth Circuit's decision a year earlier in *Astiana* holding that Rule 8(d)(3) permits plaintiffs to pursue unjust enrichment claims—which are equitable in nature—in tandem with legal claims. *Astiana*, 783 F.3d at 764; *accord Kabbash*, 2015 WL 2015 WL 6690236, at *6.

The reasoning in *Moyle* and *Astiana* applies equally with respect to the equitable relief sought under the UCL, FAL and CLRA. In *Cabrales v. Castle & Cooke Mortg., LLC*, 2015 WL 3731552, at *3 (E.D. Cal. June 12, 2015), for example, the court rejected the argument that "the presence of legal claims in the [complaint] dooms Plaintiff's UCL claims," explaining that there is no question that Plaintiff can pursue that claim as an alternative to legal remedies . . . ." *Cabrales*, 2015 3731552 at *4. And as the district court in *Adkins v. Comcast Corp.*, 2017 WL 3491973, at *3 (N.D. Cal. Aug. 1 2017), concluded when presented with the same

---

[12] Although *Moyle* also determined that ERISA did not prohibit a plaintiff from simultaneously seeking equitable and legal relief in his or her complaint, that is a distinction without a difference because neither does the CLRA, UCL or FAL.

arguments Defendant makes here, "this Court is aware of no basis in California or federal law for prohibiting the plaintiffs from pursuing their equitable claims in the alternative to legal remedies at the pleading stage." *See also In re Lenovo Adware Litig.*, 2016 WL 6277245, at *11 (N.D. Cal. Oct. 27, 2016) (UCL claim survived dismissal despite the existence of an adequate remedy at law because plaintiffs "are permitted to plead remedies in the alternative").

Although Defendant cites a few contrary authorities, it does not appear that the plaintiffs in those cases raised an issue about whether the defendants' argument could be reconciled with Rule 8(a)(3) and controlling Ninth Circuit decisions.  For example, in this Court's decision in *Bentley*, 2016 WL 7443189, at *6, the Court noted that the "Plaintiff [did] not address [defendant's] arguments" on the issue.

Moreover, Defendant is asking the Court to take inconsistent positions with respect to unjust enrichment on the one hand, and claims under the CLRA, FAL and UCL on the other hand.  "There is little doubt that unjust enrichment is an equitable claim."  *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1078 (N.D. Cal. 2009).  *Astiana* and *Kabbash* establish that an unjust enrichment claim may proceed in tandem with legal claims, and thus it necessarily follows that the presence of an adequate remedy at law does not bar such claims.  *See also e.g.*, *Broomfield*, 2017 WL 3838453, at *13 (citing Rule 8(d)(2) and rejecting argument that unjust enrichment claim failed due to adequate remedy at law); *Cabrales*, 2015 WL 3731552, at *3 ("although unjust enrichment applies only in the absence of an adequate remedy at law, a litigant is entitled to assert inconsistent theories of recovery at the pleadings stage."). There is no logical reason to conclude that Rule 8(a)(3) only permits a plaintiff to seek equitable relief in the alternative when alleging an unjust enrichment claim, but not when alleging claims under the CLRA, FAL and UCL.

### 3. Under This Court's Decision in *Kabbash*, Plaintiffs Have Standing to Seek Injunctive Relief

Defendant contends that there is no "plausible threat of future injury" because Plaintiff is now "aware that the Products contained synthetic ingredients," and thus she has no basis to seek injunctive relief.  MTD at 20:19-20.  This Court rejected the same argument in *Kabbash*, 2015 WL 6690236, at *6, explaining:

> While it is implausible to believe that Plaintiffs will continue to
> purchase products from Defendant so long as it continues the
> challenged conduct, to construe that as a lack of redressability here
> would render California consumer protection laws ineffectual.  The
> California Supreme Court has held that the purpose of these laws is to
> protect both consumers and competitors by promoting fair
> competition in commercial markets for goods and services.  Due to
> the fact that the alleged false advertising plausibly poses an immediate
> threat to consumers who comprise the putative class, Plaintiffs may
> pursue injunctive relief on their behalf.

Many other courts have applied the same reasoning to reach the same conclusion. *See*, *e.g.*, *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing . . . as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws"); *Ingalls v. Spotify USA, Inc.*, 2017 WL 3021037, at *6 (N.D. Cal. July 17, 2017) (collecting numerous authorities that are consistent with *Kabbash* and *Henderson*).  Defendant offers the Court no basis to depart from its decision in *Kabbash*.

Moreover, Defendant overlooks that dismissal of a demand for injunctive relief accomplishes nothing other than fostering costly, two-front litigation.  Courts that have dismissed prayers for injunctive relief based on Article III standing have explained that the plaintiff can separately pursue a parallel claim for injunctive relief

in state court, where Article III standing requirements do not apply. *See*, *e.g.*, *Deitz v. Comcast Corp.*, 2006 WL 3782902, at *4 (N.D. Cal. Dec. 21, 2006) (dismissal of a demand for injunctive relief "raises the interesting prospect that plaintiff may still be permitted to assert a claim for injunctive relief in state court against defendants, notwithstanding that this case may go to judgment."). Hence, Defendants have little to gain from a dismissal of a prayer for injunctive relief, because all they will have to show for it are two lawsuits instead of one. Cost and efficiency concerns therefore further support the approach adopted by this Court in *Kabbash*.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss. Alternatively, if the Court determines the pleadings are deficient in any respect, it should grant leave to amend.

Dated: October 10, 2017          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____/s/ Joel D. Smith_____
                Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Yeremey O. Krivoshey (State Bar No. 295032)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com
          jsmith@bursor.com
          ykrivoshey@bursor.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan (State Bar No. 208436)
600 W. Broadway, Suite 700
San Diego, California 92101
Telephone: (619)272-7014

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile:  (619)330-1819
E-Mail: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff*